**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **PRO-LIFE ACTION LEAGUE, ILLINOIS RIGHT TO LIFE, and ILLINOIS RIGHT TO LIFE ACTION,** | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **Case No.** |
| **ILLINOIS PRO-LIFE ACTION, and RIGHT TO LIFE ACTION,** | ) | **DEMAND FOR JURY TRIAL** |
| **Defendants.** | ) | |

**COMPLAINT**

Plaintiffs, Pro-Life Action League ("PLAL"), Illinois Right to Life ("IRL"), and Illinois Right to Life Action ("IRLA") (collectively "Plaintiffs"), for their Complaint against Defendants, Illinois Pro-Life Action ("IPLA") and Right To Life Action ("RLA") (collectively "Defendants"), allege:

**INTRODUCTION**

1. For more than forty years, Plaintiff PLAL, an Illinois 501(c)(3) not-for-profit, funded solely by charitable donations, has used the mark "Pro-Life Action League" continuously and nationwide in connection with its charitable, educational, and advocacy services and the sale of branded merchandise. It is well known nationally within the pro-life community and has spent years and significant resources developing its reputation and a network of financial supporters for its work.

2. Plaintiff IRL has used the mark "Illinois Right to Life" for over fifty years. Plaintiff IRL was founded in 1968 by a group of doctors and lawyers who were concerned with the direction the nation was headed in on the issue of abortion. Their goal was to create an

organization tasked with educating the Illinois public about abortion – one that would honor the dignity and sanctity of human life at all stages. Since then, Plaintiff IRL has expanded to include issues of euthanasia, physician assisted suicide, and IVF. Plaintiff IRL's core belief is that human life should be legally protected at all stages – "from womb to tomb" – without exceptions.

3. In 2017, Illinois Right to Life merged with Illinois Citizens for Life to create Illinois Right to Life Action – the only 501(c)(4) in Illinois exclusively dedicated to lobbying on behalf of life in Springfield. Illinois Right to Life Action has been using that mark since that time. Both IRL and IRLA are well known nationally within the pro-life community and they have spent years and significant resources developing their reputations and a network of financial supporters for their work.

4. In November 2024 a new entity calling itself Illinois Pro-Life Action adopted a name confusingly similar to PLAL's, IRL's, and IRLA's famous marks and began an infringing fundraising campaign that trades on PLAL's, IRL's and IRLA's goodwill and misleads donors.

5. It is unclear when Defendant "Right To Life Action" ("RLA") adopted a name confusingly similar to PLAL's, IRL's and IRLA's famous marks, but it began doing so by at least January 2026. It began an infringing fundraising campaign that trades on PLAL's, IRL's and IRLA's goodwill and misleads donors.

6. Alex Dorr, Chris Dorr, and Ben Dorr are Defendant IPLA's directors.

7. Chris Dorr is Defendant RLA's president.

8. In 2025 and 2026, Defendants mailed numerous solicitation letters from Lancaster, Ohio, and Marietta, Georgia, using "Mailer's Postmark Permit 13" and "Mailer's

Postmark Permit 215." Attached as Exhibit 1 to this Complaint is a sampling of true and correct copies of those letters, incorporated by reference.

9. Because of the similarity in form and content to Plaintiffs' fundraising communications, longtime supporters have misdirected their donations intended for Plaintiffs to IPLA in response to its copycat solicitations.

10. One PLAL donor who resides in North Aurora, Illinois, sent several checks to IPLA in response to its solicitations. That long-time donor has faithfully supported Plaintiff PLAL based on his personal knowledge of PLAL's founders' honesty and trustworthiness and tireless work on behalf of pro-life causes. That PLAL donor sent at least three checks to Defendant IPLA because he believed IPLA was affiliated with Plaintiff PLAL. But for Defendant IPLA's infringement, that donor would not have donated the funds he donated to Defendant IPLA, but instead would have donated those funds to Plaintiff PLAL.

11. Defendant IPLA cashed those misdirected "donations" intended for Plaintiff PLAL. After PLAL's longtime donor sent those checks to Defendant IPLA, he contacted Plaintiff PLAL and learned the truth: that Defendant IPLA was misleading Plaintiff PLAL's supporters who intended to donate to Plaintiff PLAL into sending funds to Defendant IPLA.

12. Defendant IPLA has sent donation solicitations to other PLAL supporters, one of its founders, and at least one employee.

13. Plaintiff IRL has received phone calls from its donors who received solicitations from Defendants IPLA and RLA and who were confused by those solicitations. Similarly, Plaintiffs IRL and IRLA reasonably believe that Defendant IPLA has been contacting many of their donors and that donations intended for Plaintiffs IRL and IRLA have been diverted to Defendant IPLA.

14. Defendant RLA also sent solicitations to pro-life donors in Illinois (and on information and belief elsewhere), including Plaintiffs' donors, posing under the name "Right To Life Action." One donor received mail purporting to be from "Right To Life Action," which, like many IPLA mailings, was mailed using Mailer's Postmark Permit 13 from zip code 43130 (Lancaster, OH).[1]

15. Plaintiffs bring claims against Defendant IPLA and RLA for: (a) false designation of origin/false association under Lanham Act § 43(a)(1)(A), 15 U.S.C. § 1125(a)(1)(A) and (b) false or misleading advertising under Lanham Act § 43(a)(1)(B), 15 U.S.C. § 1125(a)(1)(B).

16. Plaintiffs seek temporary, preliminary, and permanent injunctive relief, corrective notice, an accounting, disgorgement of Defendants' ill-gotten profits, actual damages, treble/enhanced damages, and an award of attorneys' fees under 15 U.S.C. § 1117(a).

## JURISDICTION AND VENUE

17. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1121 because Plaintiffs' claims arise under the Lanham Act.

18. Personal jurisdiction is proper because all Defendants reside or transact business in Illinois and the infringing mailings were directed to residents of this District.

19. Defendants all transacted business in this state and conducted or directed infringing fundraising in this state that is subject to this litigation.

---

[1] According to the U.S. Postal Service, a permit imprint is a way to pay for discount or bulk postage. "Permit imprints are the only postage option that can ONLY be used for business mailing." "Permit Imprint service is best for customers who ship large volumes of mail. It is suited for mailers who are able to deposit their mail at the same location, or few locations, because an application, which requires a fee for select mail classes is needed at each location." In order to use a permit imprint, "[m]ailpieces must be taken to the Post Office where you hold your permit." https://faq.usps.com/s/article/What-is-a-Permit-Imprint.

20. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District, including IPLA's operation from and solicitation of donations through its Glen Carbon, Illinois address, its receipt or processing of donations directed to that address, and the effects of its infringing conduct in this District.

## PARTIES

21. Plaintiff PLAL is a non-profit corporation with its office in Aurora, Illinois. It was founded in 1980 by prominent pro-life advocates Joe and Ann Scheidler. PLAL is one of the oldest and most effective outreaches for life in the country. PLAL's mission is to defend the sanctity of human life through public education, peaceful activism, and legal advocacy. It disseminates literature, conducts rallies and conferences, and sells branded merchandise bearing the "Pro-Life Action League" mark to support its charitable work.

22. Plaintiff Illinois Right to Life ("IRL") is an Illinois charitable and educational organization headquartered in Chicago. Founded in 1968 by pro-life doctors and lawyers in Illinois, IRL is the oldest pro-life organization in Illinois and has continuously used the names "Illinois Right to Life" and "Right to Life" in Illinois for more than five decades, supporting its public education, publications, events, and donor outreach, thereby accruing substantial common-law trademark rights and goodwill. Plaintiff IRL operates well-known statewide programs, including Project Love—an emergency-grant program that since 1996 has awarded over half a million dollars in grants to pregnant women and new mothers—and co-leads the Illinois Pro-Life March with its § 501(c)(4) arm, Illinois Right to Life Action. In 2017, Plaintiff IRL publicly announced a merger with the former "Illinois Citizens for Life" to form Plaintiff IRLA, consolidating lobbying/advocacy under the (c)(4) and education under IRL. Both

Plaintiffs IRL and IRLA have continuously presented themselves to the public under the Right to Life identity in Illinois.

23. Defendant IPLA is an Illinois not-for-profit corporation organized on November 6, 2024, with its registered agent, Incorp Services, Inc., at 901 S. 2nd Street, Suite 201, Springfield, Illinois 62704-7909. IPLA represents in its public sworn filings at the Illinois Secretary of State that its "Principal Office" is 3733 S State Route 159, Suite 424, Glen Carbon, Illinois 62034.

24. Alex Dorr, Chris Dorr, and Ben Dorr are directors of Defendant IPLA. According to Defendant IPLA's 2025 Annual Report filing with the Illinois Secretary of State, they all have addresses in Glen Carbon, Illinois.

25. Aaron Dorr was the incorporator for Defendant IPLA and served as a director at relevant times, from at least November 6, 2024, until September 1, 2025.

26. Defendant Right To Life Action is a Pennsylvania nonprofit corporation incorporated on June 25, 2024. Its president is defendant Chris Dorr. Its registered agent is Incorp Services, Inc., at 590 Centerville Road, Suite 180, Lancaster, Pennsylvania 17601. Its public mail-in donation address is a UPS Store, 590 Centerville Road, PMB 180, Lancaster, Pennsylvania.

## FACTUAL BACKGROUND

### PLAINTIFFS' TRADEMARK RIGHTS

27. Since at least 1980 Plaintiff PLAL has continuously used the designation Pro-Life Action League as its name and as a trademark in interstate commerce (brochures, newsletters, merchandise, website, social media, event banners, podcasts, and court filings).

28. Plaintiff PLAL's mark is inherently distinctive and, through more than four decades of nationwide promotion, has acquired substantial secondary meaning.

29. Plaintiff PLAL's prominence is underscored by extensive media coverage, including features on Nightline, Hannity's America, The O'Reilly Factor, Crossfire, Oprah, Good Morning America, and in Newsweek, Time, the Los Angeles Times, and the Chicago Tribune.

30. Further, Plaintiff PLAL was the prevailing party in the U.S. Supreme Court's landmark case *NOW v. Scheidler*, 537 U.S. 393 (2003). It has also been a named plaintiff in other litigation seeking to protect the rights of pro-life advocates and otherwise advance the pro-life cause.

31. As a result, the Pro-Life Action League mark is famous within the meaning of 15 U.S.C. § 1125(c) and enjoys strong consumer recognition among donors, activists, media, and the pro-life community nationwide.

32. The Pro-Life Action League mark, as well as IRL's and IRLA's marks, are strong and widely recognized among pro-life donors, activists, organizations, and members of the relevant public.

33. Plaintiff PLAL has expended substantial sums—millions of dollars over four decades—promoting its brand and cause, thereby generating invaluable goodwill.

34. Plaintiff PLAL has never licensed or authorized Defendants to use any colorable imitation of the Pro-Life Action League mark.

35. Plaintiff IRL was founded in 1968 and has, ever since, used the "Illinois Right to Life" name in Illinois across educational services, publications, events, and donor outreach—creating substantial common-law trademark rights and goodwill.

36. Plaintiff IRL's statewide programs include Project Love (emergency grants for rent, utilities, and other urgent needs) and the Illinois Pro-Life March (formerly the

Illinois/Chicago March for Life), which Plaintiffs IRL and IRLA jointly host. These long-running public-facing programs reinforce the distinctiveness of Plaintiff IRL's name among Illinois donors and supporters.

37. In 2017, Plaintiff IRL merged with Illinois Citizens for Life to create Plaintiff IRLA, aligning lobbying with IRLA and nonpartisan education with IRL, under the shared Illinois Right to Life brand family.

38. Plaintiff IRL, like PLAL, has prevailed as a named plaintiff in a number of pro-life cases, including *Illinois Right to Life v. Pritzker*, First Amendment litigation challenging COVID restrictions that inhibited pro-life speech while permitting other speech. IRL has also been a named plaintiff in other litigation seeking to protect the rights of pro-life advocates and otherwise advance the pro-life cause.

39. Neither Defendant IPLA nor Defendant RLA is licensed or authorized by Plaintiff IRL or IRLA to use or trade on IRL's Right to Life or IRLA's Right to Life Action name, goodwill, or donor relationships.

**DEFENDANTS' WRONGFUL ADOPTION OF CONFUSINGLY SIMILAR NAMES AND THEIR INFRINGING "PRO-LIFE" SOLICITATION CAMPAIGN**

40. On November 6, 2024, Defendant IPLA was incorporated using the name Illinois Pro-Life Action, which is confusingly similar to Pro-Life Action League, Illinois Right To Life and Illinois Right To Life Action.

41. Shortly thereafter Defendant IPLA disseminated fund-raising letters using IPLA's name and touting IPLA's supposed courtroom victories on behalf of the pro-life movement and urgent need for funds.

42. Around May 7, 2025, three callers contacted Plaintiff IRL and asked Plaintiff IRL to remove them from its mailing list after receiving mail which they believed was sent by

Plaintiff IRL, but which was not sent by Plaintiff IRL. One caller said he received many pieces of mail from Plaintiff IRL and demanded to be removed from Plaintiff IRL's mailing list. But Plaintiff IRL did not find the man's name in its mailing list. Another caller explained that she contacted Plaintiff IRL because Plaintiff IRL was "bombarding" people with mailings. While on the phone with an IRL employee, the caller confirmed that the mailing was in fact from Defendant IPLA, not IRL.

43. On August 6, 2025, another recipient who received an "Illinois Pro-Life Action" letter called Plaintiff IRL, demanded removal from its mailing list, and threatened to report Plaintiff IRL to the Better Business Bureau. IRL staff were able to explain the caller's confusion and confirm that the letter was from Defendant IPLA, not Plaintiff IRL.

44. Plaintiff PLAL first learned of Defendants' mail campaigns when a longtime donor from North Aurora contacted a Plaintiff PLAL staff member in July 2025 and asked whether the Defendant IPLA's solicitation letter was from Plaintiff PLAL.

45. Around the same time, another person who received Defendant IPLA's solicitation called Plaintiff PLAL after conducting a Google search based on the letter's contents, because the letter did not include a phone number, email address, or website associated with Plaintiff PLAL.

46. Plaintiff PLAL obtained the solicitation letter from a longtime North Aurora donor.

47. Plaintiff PLAL discovered that Defendant IPLA mailed solicitation letters via the United States Postal Service from Lancaster, PA and Lancaster, OH to Illinois residents, including Plaintiff PLAL's donor.

48. The solicitation letters request donations payable to "Illinois Pro-Life Action" at a Glen Carbon P.O. Box. The letter stated: "it will be much harder for pro-life organizations like ILPLA to win these victories in court" should a state constitutional amendment pass.

49. Upon information and belief, contrary to the representations in its solicitation letters, IPLA is not a pro-life organization and has never brought a lawsuit, let alone won a "victor[y] in court" as it represents to victims.

50. IPLA has also stated in fundraising materials that "there's never been a better time to challenge Illinois' wicked abortion laws in the legislature, and in court"; "With Roe v Wade in the dust, Illinois' wicked abortion laws are ripe for court challenges!"; "[The overturning of *Roe v. Wade*] opened up a path to fighting for the unborn in court." *See* Exhibit 1.

51. These claims falsely imply that Defendant IPLA has a pro-life litigation track record, which heightens the risk that donors encountering "Illinois Pro-Life Action" will erroneously assume affiliation with Plaintiff PLAL, IRL or IRLA.

52. In June of 2026, an Illinois Right to Life donor or prospective donor left a voicemail with Illinois Right to Life, saying she had given a donation to the office in "Glen Carbon" and had already been asked for more money.

53. As a direct and proximate result of Defendant IPLA's conduct, PLAL, IRL and IRLA have suffered monetary damages arising from: (a) diversion of prospective donations; (b) reputational harm from misdirected complaints; (c) corrective-communication costs and staff time; and (d) loss of control over their goodwill. The likelihood of confusion and loss of control independently support injunctive relief and other relief.

54. Defendants' infringement and misleading statements are currently causing irreparable harm to Plaintiffs and Defendants' misconduct threatens to continue unless enjoined.

Defendant IPLA's very choice of name demonstrates intent to benefit from the decades-old reputation of the Pro-Life Action League and Illinois Right to Life names.

**The Fundraising History of Defendants and their Principals**

55. Public reporting alleges that Aaron Dorr, Alex Dorr, Chris Dorr, and Phil Roe have operated a string of organizations that "keep[] the donations flowing" while their legislative and litigation activities remain under wraps. Brian Freskos & Alain Stephens, The 'Scam Artist' Brothers Tearing the Gun Movement Apart, DAILY BEAST (June 23, 2020), https://www.thedailybeast.com/meet-the-brothers-behind-an-extreme-gun-rights-network-republicans-call-a-big-scam/. Their method often involves the tactic used here—adopting a cause-sounding name that mimics the name of an existing advocacy organization.

56. When the brothers expanded into Illinois in 2024, one investigative publication detailed the brothers' tactics and published the solicitation letter they used to secure funds for the Illinois Firearms Association. John Boch, GRIFT, INC.: Dorr Brothers Come to Illinois Fundraising for the "Illinois Firearms Association", GUNS SAVE LIFE (Jan. 24, 2024) ("the GRIFT, INC. article"). See https://www.gunssavelife.com/2024/01/24/grift-inc-dorr-brothers-come-to-illinois-fundraising-for-the-illinois-firearms-association/.

57. That letter followed a similar template to that used by the brothers in their IPLA plot. It represents that the group was fighting an "AR-15 ban in Federal Circuit Court," that they would use "targeted digital ads," "a powerful texting program," "the biggest direct mail and email program possible," and "radio and TV ads when floor votes are scheduled." It tells prospective donors to mail checks to an address corresponding to a UPS store.

58. The GRIFT INC. article summarized the family enterprise: "They have built a massive grassroots fundraising machine that churns out a steady stream of messages beseeching

donations to snuff out gun control, abortion rights, and other sources of conservative outrage." *Id.*

59. The brothers have been active in North Carolina as well. A February 2025 analysis of a firearm coalition run by the "infamous Dorr brothers" observed that their "specialty is raking in money by attacking pro-gun legislators and legislation with claims that they aren't pro-gun enough." Tom Knighton, The Other Enemy, BEARING ARMS (Feb. 4, 2025), https://bearingarms.com/tomknighton/2025/02/04/the-other-enemy-n1227563. The article states that the brothers' "predatory fundraising" scheme used a UPS store as their office, and lied to donors by claiming to work with legislators who, in truth, had never heard from them.

60. A 2019 Buckeye Firearms Association alert reported that the brothers had established "what amounts to a family business" in Ohio, Iowa, Minnesota, Missouri, Idaho, Tennessee, Virginia, New Hampshire, Wisconsin, and Georgia. They were allegedly "funneling the money to an out-of-state, for-profit business and pocketing the money along with family members." Report: Ohio Fundraising Scam Aimed at Gun Owners?, BUCKEYE FIREARMS ASS'N (Aug. 30, 2019), https://www.buckeyefirearms.org/report-ohio-fundraising-scam-aimed-gun-owners.

61. An exposé into the brothers' schemes in 2019 found that the group registered Ohio Gun Owners out of an Ohio UPS store. The report concluded that the brothers' various organizations funnel most of donors' money back into "fundraising expenses." Minnesota Gun Rights, for instance, spent $200,000 of its $225,200 annual income on fundraising expenses. The exposé also discovered that the brothers use non-profit donations to pay for management fees from Midwest Freedom Enterprises, an entity registered to the same address as one of the brothers' non-profits. One brother, Aaron, had been identified as the director of marketing for

Midwest Freedom Enterprises. https://www.cleveland.com/open/2019/08/how-one-ohio-gun-rights-group-aims-to-upend-the-public-debate-by-scaring-republicans.html.

62. Minnesota's leading pro-life organization cautioned supporters that the brothers' newly minted "Minnesota Right to Life" was a "scam created by the Dorr brothers, well-known scammers who have created fake groups . . . in a number of states." "Watch Out for 'Minnesota Right to Life'", MINNESOTA CITIZENS CONCERNED FOR LIFE (Feb. 26, 2020), https://www.mccl.org/post/watch-out-for-minnesota-right-to-life-scam.

63. Based on tax filings, MPR News concluded that the brothers had raised "more than $2.9 million" in 7 years through organizations spanning three states. https://www.mprnews.org/story/2020/04/20/behind-calls-to-reopen-economy-a-mn-activist-and-his-family. This led the Minnesota Republican Party to create a website "Minnesota Scammers Exposed" detailing the multiple Dorr-founded groups and concluding, "[s]camming is a family affair for brothers Ben Dorr, Chris Dorr and Aaron Dorr." https://www.mnscammersexposed.com/minnesota-gun-rights/.

64. The formation of Illinois Pro-Life Action and Right To Life Action, and the infringing mailings by those organizations, are merely the newest instance of this plot, and it warrants enhanced damages and injunctive relief.

## **COUNT I**

### PLAL's Claim For Violation of the Lanham Act False Designation of Origin/False Affiliation – 15 U.S.C. § 1125(a)(1)(A)

65. Plaintiffs repeat and reallege the previous paragraphs as if fully set forth herein.

66. PLAL asserts this claim against Defendant IPLA.

67. PLAL owns common-law rights in the distinctive mark and trade name Pro-Life Action League, which it has used continuously since 1980 in connection with charitable, educational, and advocacy services and related merchandise.

68. Defendant IPLA's confusingly similar "Illinois Pro-Life Action" name used in interstate mail solicitations has caused actual confusion among Illinois recipients at least one of whom made donations to Defendant IPLA which were intended for Plaintiff PLAL and others who contacted Plaintiff PLAL to complain about the onslaught of solicitations they believed were from them but were actually from Defendant IPLA.

69. Defendant IPLA adopted and used the name Illinois Pro-Life Action in interstate commerce (including mailings postmarked from the zip code for Lancaster, Ohio (43130) into Illinois) in connection with its solicitation of donations.

70. Defendant IPLA's use of "Illinois Pro-Life Action" is confusingly similar to PLAL's "Pro-Life Action League" mark.

71. Defendant IPLA's use is likely to cause, and has caused, confusion, mistake, or deception as to source, sponsorship, affiliation, connection, or approval.

72. Absent relief, that confusion will continue.

73. Defendant IPLA's conduct constitutes false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

74. Plaintiff PLAL has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law and is entitled to injunctive relief under 15 U.S.C. § 1116, and to disgorgement of Defendant IPLA's profits, damages, treble/enhanced damages, costs, and attorneys' fees under 15 U.S.C. § 1117(a), and destruction/impoundment under 15 U.S.C. § 1118.

## COUNT II

### IRL And IRLA's Claims For Violation of the Lanham Act False Designation of Origin/False Affiliation – 15 U.S.C. § 1125(a)(1)(A)

75. Plaintiffs repeat and reallege the previous paragraphs as if fully set forth herein.

76. Plaintiff IRL owns common-law rights in the distinctive mark and trade name "Illinois Right to Life," which it has used since 1968.

77. Plaintiff IRLA owns common-law rights in the distinctive mark and trade name "Illinois Right to Life Action," which it has used since 2017.

78. "Right to Life Action" and Defendant IPLA's confusingly similar "Illinois Pro-Life Action" name used in interstate mail solicitations have caused or are likely to cause actual confusion among Illinois recipients.

79. Defendants RLA and IPLA adopted and used these names in interstate commerce (including mailings postmarked from the zip code for Lancaster, Ohio (43130) into Illinois) in connection with their solicitation of donations.

80. Defendants' use of "Illinois Pro-Life Action" and "Right to Life Action" is confusingly similar to IRL's "Illinois Right to Life" and IRLA's "Illinois Right to Life Action" marks and trade names.

81. Defendants' use is likely to continue to cause, and has caused, confusion, mistake, or deception as to source, sponsorship, affiliation, connection, or approval.

82. Actual confusion will continue absent relief.

83. Defendants' conduct constitutes false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

84. Plaintiffs IRL and IRLA have suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law and are entitled to injunctive relief under 15

U.S.C. § 1116, and to disgorgement of Defendants' profits, damages, treble/enhanced damages, costs, and attorneys' fees under 15 U.S.C. § 1117(a), and destruction/impoundment under 15 U.S.C. § 1118.

## COUNT III

### PLAL's Claim For Violation of the Lanham Act
### False or Misleading Statements – 15 U.S.C. § 1125(a)(1)(B)

85. Plaintiffs repeat and reallege the previous paragraphs as if fully set forth herein.

86. In solicitation letters mailed in interstate commerce, Defendant IPLA stated: "it will be much harder for pro-life organizations like ILPLA to win these victories in court."

87. The "victories in court" representation, combined with other statements by IPLA about court challenges described above, which Defendant IPLA asserts to induce donations, are false or, at minimum, misleading, because they inaccurately convey that Defendant IPLA has engaged in pro-life litigation and has achieved pro-life litigation successes.

88. The mailers are "commercial advertising or promotion" disseminated to a broad audience to induce donations. They involve mass dissemination, direct request for payment, competition for the same finite donor dollars, representations designed to confer fundraising credibility, and the resulting diversion of donations.

89. Plaintiff PLAL falls within the necessary zone of interests, and its harms are traceable to Defendant's improper use of its marks and trade names.

90. Defendant IPLA's statements were made in commercial advertising or promotion directed to a substantial segment of the relevant donating public, materially influencing donation decisions by conferring unearned credibility and effectiveness.

91. Defendant IPLA's statements entered interstate commerce via the U.S. mail and Defendant IPLA's coordinated campaign and have actually deceived or are likely to deceive a substantial segment of recipients.

92. Plaintiff PLAL has been and is likely to be injured in its business and property, including diversion of donations and loss of goodwill, by reason of Defendant IPLA's false or misleading statements.

93. Defendant IPLA's conduct violates 15 U.S.C. § 1125(a)(1)(B). Plaintiff PLAL is entitled to injunctive relief under 15 U.S.C. § 1116 and to profits, damages (including corrective advertising where appropriate), costs, and attorneys' fees under 15 U.S.C. § 1117(a).

## COUNT IV

### IRL/IRLA Claims For Violation of the Lanham Act
### False or Misleading Statements – 15 U.S.C. § 1125(a)(1)(B)

94. Plaintiffs repeat and reallege the previous paragraphs as if fully set forth herein.

95. In solicitation letters mailed in interstate commerce, Defendant IPLA stated: "it will be much harder for pro-life organizations like ILPLA to win these victories in court."

96. The "victories in court" representation, combined with other statements by IPLA about court challenges described above, which Defendant IPLA asserts to induce donations, are false or, at minimum, misleading, because they inaccurately convey that Defendant IPLA has engaged in pro-life litigation and has achieved pro-life litigation successes.

97. The mailers are "commercial advertising or promotion" disseminated to a broad audience to induce donations. They involve mass dissemination, direct request for payment, competition for the same finite donor dollars, representations designed to confer fundraising credibility, and the resulting diversion of donations.

98. Plaintiffs IRL and IRLA fall within the necessary zone of interests, and their harms are traceable to Defendant IPLA's improper use of their marks and trade names.

99. Defendant IPLA's statements were made in commercial advertising or promotion directed to a substantial segment of the relevant donating public, materially influencing donation decisions by conferring unearned credibility and effectiveness.

100. Defendant IPLA's statements entered interstate commerce via the U.S. mail and Defendant IPLA's coordinated campaign and have actually deceived or are likely to deceive a substantial segment of recipients.

101. Plaintiffs IRL and IRLA have been and are likely to be injured in their business and property (including diversion of donations and loss of goodwill) by reason of Defendant IPLA's false or misleading statements.

102. Defendant IPLA's conduct violates 15 U.S.C. § 1125(a)(1)(B). Plaintiffs IRL and IRLA are entitled to injunctive relief under 15 U.S.C. § 1116 and to profits, damages (including corrective advertising where appropriate), costs, and attorneys' fees under 15 U.S.C. § 1117(a).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against Defendants and provide the following relief:

1. Temporarily, preliminarily, and permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from:

   a) Using the name "Illinois Pro-Life Action," "IPLA," "Right to Life Action," or any other designation confusingly similar to "Pro-Life Action League," "Illinois Right to Life," or "Illinois Right to Life Action";

b) Using any false or misleading statement, including any false or misleading statement suggesting affiliation with Plaintiffs;

c) Mailing, distributing, or publishing any solicitation bearing such marks described in subsection (a) above; and

d) Holding themselves out as endorsed by or affiliated with Plaintiffs.

2. Ordering Defendants to deliver up for destruction all materials bearing the infringing designation(s);

3. Ordering Defendants to file with the Court, within thirty (30) days of any injunction, a sworn statement of compliance;

4. Ordering Defendants to send corrective notices to each person or entity that received any infringing solicitation; and

5. Awarding Plaintiffs the following additional relief:

a) An order directing Defendants to provide Plaintiffs with an accounting of all donations made in connection with Defendants' solicitations in which Defendants falsely portrayed themselves as bona fide pro-life organizations;

b) Judgment in Plaintiffs' favor in an amount equal to all profits received by Defendants in response to their infringing fundraising communications;

c) Plaintiffs' actual damages;

d) Treble/enhanced damages under 15 U.S.C. § 1117(a);

e) Plaintiffs' reasonable attorneys' fees and costs under 15 U.S.C. § 1117(a) or any other relevant statute/rule;

f) Pre-judgment and post-judgment interest; and

g) Such other and further relief as the Court deems just and proper.

Dated: August 19, 2026

Respectfully submitted,

CLAYTON PLAZA LAW GROUP, L.C.

By: /s/ J. Matthew Belz
J. Matthew Belz #MO-61088
112 South Hanley, Second Floor
St. Louis, Missouri 63105-3418
Phone: (314) 726-2800
Facsimile: (314) 863-3821
jmbelz@olblaw.com

Peter Breen
Thomas L. Brejcha
THOMAS MORE SOCIETY
121 West Wacker Drive, Suite 650
Chicago, IL 60601
Phone: (312) 782-1680
Facsimile: (312) 782-1887

Attorneys for Plaintiffs